# United States Court of Appeals
## For the First Circuit

No. 19-1818

STATE OF RHODE ISLAND,

Plaintiff, Appellee,

v.

SHELL OIL PRODUCTS CO., L.L.C.; CHEVRON CORP.; CHEVRON USA, INC.; EXXONMOBIL CORP.; BP, PLC; BP AMERICA, INC.,; BP PRODUCTS NORTH AMERICA, INC.; ROYAL DUTCH SHELL P.L.C.; MOTIVA ENTERPRISES, L.L.C.; CITGO PETROLEUM CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS CO.; PHILLIPS 66; MARATHON OIL CO.; MARATHON PETROLEUM CORP.; MARATHON PETROLEUM CO., L.P.; SPEEDWAY, L.L.C.; HESS CORP.; LUKOIL PAN AMERICAS L.L.C.; AND DOES 1-100,

Defendants, Appellants,

GETTY PETROLEUM MARKETING, INC.

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, Chief U.S. District Judge]

---

Before

Howard, Chief Judge
and Thompson, Circuit Judge.*

---

Theodore J. Boutrous, Jr., with whom Joshua S. Lipshutz,

---

* Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

Anne Champion, Gibson, Dunn & Crutcher LLP, Gerald J. Petros, Robin L. Main, Ryan M. Gainor, Hinckley, Allen & Snyder LLP, Neal S. Manne, Susman Godfrey LLP, John A. Tarantino, Patricia K. Rocha, Nicole J. Benjamin, Adler Pollock & Sheehan P.C., Philip H. Curtis, Nancy G. Milburn, Matthew T. Heartney, Arnold & Porter Kaye Scholer LLP, Matthew T. Oliverio, Oliverio & Marcaccio LLP, Theodore V. Wells, Jr., Daniel J. Toal, Jaren Janghorbani, Kannon Shanmugam, Paul, Weiss, Rifkind, Wharton, Garrison LLP, Jeffrey S. Brenner, Nixon Peabody LLP, David C. Frederick, Brendan J. Crimmins, Grace W. Knofczynski, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Daniel B. Levin, Jerome C. Roth, Elizabeth A. Kim, Munger, Tolles & Olson LLP, John E. Bulman, Stephen J. MacGillivray, Pierce Atwood LLP, Nathan P. Eimer, Pamela R. Hanebutt, Lisa S. Meyer, Raphael Janove, Ryan J. Walsh, Eimer Stahl LLP, Michael J. Colucci, Olenn & Penza, LLP, Sean C. Grimsley, Jameson R. Jones, Bartlit Beck LLP, Robert G. Flanders, Jr., Timothy K. Baldwin, Whelan, Corrente, Flanders, Kinder & Siket LLP, Steven M. Bauer, Margaret A. Tough, Latham & Watkins LLP, Jeffrey B. Pine, Patrick C. Lynch, Lynch & Pine, Shannon S. Broome, Shawn Patrick Regan, Ann Marie Mortimer, Hunton Andrews Kurth LLP, Jason C. Preciphs, Roberts, Carroll, Feldstein & Peirce, INC., J. Scott Janoe, Matthew Allen, Megan Berge, Baker Botts L.L.P., Lauren Motola-Davis, Samuel A. Kennedy-Smith, Lewis Brisbois Bisgaard & Smith LLP, Jeffrey S. Brenner, Nixon Peabody LLP, Stephen M. Prignano, Mcintyre Tate LLP, James Stengel, Robert Reznick, and Orrick, Herrington & Sutcliffe, LLP, were on brief for appellants.

Victor M. Sher, with whom Matthew K. Edling, Sher Edling LLP, and Neil F.X. Kelly, Assistant Attorney General, were on brief for appellee.

Steven P. Lehotsky, U.S. Chamber Litigation Center, Peter D. Keisler, Tobias S. Loss-Eaton, and Sidley Austin LLP, on brief for Chamber of Commerce of The United States of America, amicus curiae.

Patrick Parenteau, Vermont Law School, Harold Hongju Koh, Conor Dwyer Reynolds, Peter Gruber Rule of Law Clinic, and Yale Law School, on brief for Former U.S. Government Officials, amicus curiae.

Gerson H. Smoger, Smoger & Associates, P.C., Anthony Tarricone, and Kreindler & Kreindler, LLP, on brief for Senator Sheldon Whitehouse, Senator Jack Reed, and Senator Edward Markey, amicus curiae.

Scott L. Nelson, Allison M. Zieve, and Public Citizen Litigation Group, were on brief for Public Citizen, amicus curiae.

Robert S Peck and Center For Constitutional Litigation, P.C., on brief for The National League of Cities; The U.S. Conference of Mayors; and The International Municipal Lawyers Association, amicus curiae.

Amy Williams-Derry, Daniel P. Mensher, Alison S. Gaffney, and Keller Rohrback L.L.P., on brief for Robert Brulle, Center for Climate Integrity, Justin Farrell, Benjamin Franta, Stephan Lewandowsky, Naomi Oreskes, Geoffrey Supran, and The Union of Concerned Scientists, amicus curiae.

William A. Rossbach and Rossbach Law, PC on brief for Mario J. Molina, Michael Oppenheimer, Robert E. Kopp, Friederike Otto, Susanne C. Moser, Donald J. Wuebbles, Gary B. Griggs, Peter C. Frumhoff and Kristina Dahl, amicus curiae.

Peter Huffman on brief for Natural Resources Defense Council, amicus curiae.

Xavier Becerra, Attorney General for the State of California, David A. Zonana, Supervising Deputy Attorney General, Erin Ganahl, Deputy Attorney General, Heather Leslie, Deputy Attorney General, Maura Healey, Attorney General for the Commonwealth of Massachusetts, Seth Schofield, Senior Appellate Counsel, William Tong, Attorney General of Connecticut, Kathleen Jennings, Attorney General of Delaware, Clare E. Connors, Attorney General of Hawaii, Aaron M. Frey, Attorney General of Maine, Brian E. Frosh, Attorney General of Maryland, Keith Ellison, Attorney General of Minnesota, Gurbir S. Grewal, Attorney General of New Jersey, Letitia James, Attorney General of New York, Ellen F. Rosenblum, Attorney General of Oregon, Thomas J. Donovan, Attorney General of Vermont, and Robert W. Ferguson, Attorney General of Washington on brief for Commonwealth of Massachusetts, State of California, State of Connecticut, State of Delaware, State of Hawaii, State of Maine, State of Maryland, State of Minnesota, State of New Jersey, State of New York, State of Oregon, State of Vermont, and State of Washington, amicus curiae.

Matthew D. Hardin on brief for Energy Policy Advocates, amicus curiae.

---

October 29, 2020

---

**THOMPSON**, **Circuit Judge**. Rhode Island is salty about losing its already limited square footage to rising sea levels caused by climate change. Facing property damage from extreme weather events and otherwise losing money to the effects of climate change, Rhode Island sued a slew of oil and gas companies for the damage caused by fossil fuels while those companies misled the public about their products' true risks.

Because those claims were state law claims, Rhode Island filed suit in state court. The oil companies, seeing many grounds for federal jurisdiction, removed the case to federal district court. Rhode Island opposed removal and asked that the district court kindly return the lawsuit to state court. The district court obliged and allowed Rhode Island's motion for remand.

The oil companies appealed the district court's order to us and a heated debate ensued over the scope of our review. After careful consideration, we conclude that 28 U.S.C. § 1447(d) permits our review of remand orders only to the extent that the defendant's grounds for removal are federal-officer jurisdiction, pursuant to 28 U.S.C. § 1442 or civil rights jurisdiction, pursuant to 28 U.S.C. § 1443. The oil companies make no argument that this is a civil rights case and we conclude the allegations in Rhode Island's state court complaint do not give rise to federal-officer jurisdiction. Having jurisdiction to review no

more than that question, we affirm the district court's remand order.

## BACKGROUND

### Rhode Island's State Court Case

We summarize Rhode Island's claims, taking all well-pleaded allegations in its state court complaint as true for the purposes of our analysis. Ten Taxpayer Citizens Grp. v. Cape Wind Assocs., LLC, 373 F.3d 183, 186 (1st Cir. 2004).

In 2018, faced with rising sea levels, higher average temperatures and extreme heat days, more frequent and severe floods, tropical storms, hurricanes, and droughts, Rhode Island sued, in state court, nearly every oil and gas company under the sun.[1] According to Rhode Island, the companies knew that their fossil fuel products were hazardous to the planet and concealed those risks, instead opting to market their products in Rhode Island and promote "antiscience campaigns." The oil companies actively worked to muddy the waters of scientific consensus, collecting decades of detailed research into the global impact of fossil fuels but hiding the results.

All of this left the state up the creek without a paddle once the effects of fossil fuels became more clear, working to combat the effects of a warming planet and an extreme climate.

[1] The defendants are unified in their arguments about the issues before us, so we treat them as one group in our analysis.

And those effects are no joke. Most Rhode Island cities and towns are below the floodplain and New England as a whole is losing ground to the ocean at a rate three to four times faster than the global average (and Rhode Island is hardly big enough to sacrifice so much of its land). Those rising sea levels have already increased erosion and the damage of storm surges along Rhode Island's coast. On top of the work it has already done to respond to these environmental crises, Rhode Island anticipates that the costs will only grow as it responds to more frequent and extreme flooding and other storm damage.

Rhode Island therefore brought this lawsuit "to ensure that the parties who have profited from externalizing the responsibility for [climate change] bear the costs of those impacts on Rhode Island." Or, as the district court aptly summarized: "Climate change is expensive, and the State wants help paying for it." Rhode Island v. Chevron Corp., 393 F. Supp. 3d 142, 146 (D.R.I. 2019).

The state court complaint lists state causes of action: public nuisance, various products liability claims, trespass, impairment of public trust resources, and violation of the state's Environmental Rights Act. The theories of liability vary to fit each cause of action, but at its core, Rhode Island's claim is simple: the oil companies knew what fossil fuels were doing to

the environment and continued to sell them anyway, all while misleading consumers about the true impact of the products.

**District Court Litigation**

The oil companies removed the case to the district court, arguing that it falls within federal jurisdiction under a variety of theories. The oil companies contended that removal was proper pursuant to 28 U.S.C. § 1441, which permits removal of any cases that could have been originally brought in federal court. To support that ground for removal, the oil companies in turn argued that the district court could have had jurisdiction over the case from the start per 28 U.S.C. § 1331 because the complaint presents a federal question. The oil companies also argued that any of a flock of specific jurisdiction statutes provided the necessary hook to keep the case in federal court, citing the federal-officer removal statute, the Outer Continental Shelf Lands Act, federal-enclave jurisdiction, the bankruptcy-removal statute, and admiralty jurisdiction.

Rhode Island disagreed with all of these arguments and moved for the case to be remanded to state court.

The district court evaluated each of the oil companies' claims and saw no federal jurisdiction lurking within Rhode Island's state causes of action. Accordingly, the district court ordered the case remanded to state court.

## Questions on Appeal

The oil companies appealed the remand order to us. As we detail below, Rhode Island argues that our appellate jurisdiction is limited by 28 U.S.C. § 1447(d) to considering only whether the district court was wrong about federal-officer removal and forsaking the other grounds for removal claimed below. Rhode Island, of course, contends the district court was correct to reject the federal-officer removal theory. The oil companies read § 1447(d) to authorize appellate review of the entire remand order and tell us that, were we to review the entire order, we would find that the district court improperly remanded the case. Should we limit our review only to the federal-officer jurisdiction question, the oil companies are confident we will still find federal jurisdiction.

## OUR TAKE

The first question we must resolve is the scope of our review of this appeal under 28 U.S.C. § 1447(d). Is our appellate jurisdiction limited to the types of removal listed in § 1447(d) or may we examine every basis for removal alleged by the oil companies and rejected by the district court? We begin with the statute and then detail our interpretation of it, peppering our discussion with each side's contentions along the way. Concluding that our review is cabined to the question of whether the district court has jurisdiction over this case pursuant to federal officer

removal, we then analyze whether Rhode Island's complaint meets that threshold, and ultimately conclude it does not.

**Scope of Appellate Review**

Section 1447(d) of Title 28 United States Code, provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

Section 1442, in turn, authorizes defendants to remove from state court cases involving "[f]ederal officers or agencies" and § 1443 permits removal of civil rights cases. The parties dispute whether this provision means we only have appellate jurisdiction over the portion of the remand order rejecting federal-officer jurisdiction or whether the entire remand order falls within our purview.

Rhode Island argues that § 1447(d) only permits us to review the district court's order so far as it applies to the federal-officer jurisdiction argument. Though our Circuit has held that § 1447(d) generally prohibits review of remand orders with only narrow exceptions, see Ochoa Realty Corp. v. Faria, 815 F.2d 812, 815 (1st Cir. 1987), we have not yet addressed the precise question presented here. Though this is not a popularity contest, Rhode Island counts among its friends nearly all of the

circuits that have weighed in on the topic and have limited appellate review to federal officer or civil rights removal. See Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc., 965 F.3d 792, 802 (10th Cir. 2020); Mayor & City Council of Baltimore v. BP P.L.C., 952 F.3d 452, 459 (4th Cir. 2020), cert. granted sub nom. BP P.L.C. v. Mayor & City Council Baltimore, No. 19-1189 (U.S. Oct. 2, 2020); Cty. of San Matteo v. Chevron Corp., 960 F.3d 586, 595-96 (9th Cir. 2020), Jacks v. Meridian Resource Co., 701 F.3d 1224, 1229 (8th Cir. 2012); Patel v. Del Taco, Inc., 446 F.3d 996, 998 (9th Cir. 2006); Alabama v. Conley, 245 F.3d 1292, 1293 n.1 (11th Cir. 2001); Davis v. Glanton, 107 F.3d 1044, 1047 (3d Cir. 1997); State Farm Mut. Auto Ins. Co. v. Baasch, 644 F.2d 94, 97 (2d Cir. 1981).[2]

The oil companies tell us that a plain text reading of § 1447(d) easily answers this question. In short, the word "order" means the district court's entire remand order both times that it appears in § 1447(d), so we have appellate jurisdiction to review the entirety of the remand order and consider whether any of the grounds asserted below for jurisdiction are sufficient to keep this suit in federal court. They lean on the Seventh Circuit's

[2] The Supreme Court recently granted a writ of certiorari to resolve the circuit split on this question. BP P.L.C. v. Mayor & City Council Baltimore, No. 19-1189 (U.S. Oct. 2, 2020).

decision in Lu Junhong v. Boeing Co., which adopted this interpretation. 792 F.3d 805, 811 (7th Cir. 2015).

In Lu Junhong, the Seventh Circuit evaluated the provision at issue here and concluded that "to say that a district court's 'order' is reviewable is to allow appellate review of the whole order, not just of particular issues or reasons." 792 F.3d at 811. In its analysis, the Seventh Circuit primarily relied on the Supreme Court's decision in Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199 (1996). In Yamaha, the Court examined the scope of appellate jurisdiction over a district court order during an interlocutory appeal under 28 U.S.C. § 1292(b). 516 U.S. at 205. For its part, § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order[.]

28 U.S.C. § 1292(b) (emphasis added); see Yamaha Motor Corp., 516 U.S. at 205 (quoting section and emphasizing same language). The Yamaha Court held that the language of § 1292(b) permitted an appellate court to review the entire order, rather than being bound by the district court's framing of the "controlling question."

516 U.S. at 205. The Seventh Circuit reasoned that Yamaha's understanding of "order" was the same interpretation called for in § 1447(d).

Seeing all of this, the oil companies rely on Lu Junhong and Yamaha for their conclusion that the entirety of the district court's remand order is fair game. The Seventh Circuit pronounced its interpretation of the word "order" in Lu Junhong to be "entirely textual," 792 F.3d at 812, and so the oil companies would have us resolve this question with the same allegedly textual approach.

We agree, of course, that we begin with the language of the statute. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 128 (1st Cir. 2019), cert. denied sub nom. Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 140 S. Ct. 855 (2020). But a plain text interpretation (of the sort the oil companies promote) is only appropriate where the statutory language that applies to the word "order" is unambiguous. See Babb v. Wilkie, 140 S. Ct. 1168, 1177 (2020) ("Where . . . the words of a statute are unambiguous, the judicial inquiry is complete.") (internal quotation marks and citation omitted) (alteration adopted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." In re Fin. Oversight & Mgmt.

Bd. for Puerto Rico, 919 F.3d at 128 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).

The first phrase of § 1447(d) ("[a remand] order . . . is not reviewable on appeal or otherwise") is clear that the section is an overall prohibition on appellate review of remand orders. The second phrase is where things get cloudy. Section 1447(d) provides for exceptions to that general prohibition on review ("except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise"), but is latently ambiguous because § 1447(d) "does not expressly contemplate the situation in which removal is done pursuant to [federal officer removal] and other grounds." Suncor Energy (U.S.A.) Inc., 965 F.3d at 805 (emphasis in original). In that circumstance (which is the case here), the provision leaves open whether the entire remand order or only the part that rejects federal-officer removal is reviewable.

Seeing this ambiguity, we are unmoved by the Seventh Circuit's reasoning in Lu Junhong because the "entirely textual" analysis there was premised on clarity that § 1447(d) lacks. See 792 F.3d at 812. The Tenth Circuit examined the same question we are faced with here and noted that to make its textual analysis function in Lu Junhong, the Seventh Circuit had to bend the rules.

> The Lu Junhong court impliedly conceded [that there is ambiguity § 1447(d)] in asserting that "Section 1447(d) itself authorizes review of the remand order, because the case was removed (in part) pursuant to § 1442." 792 F.3d at 811 (emphasis added). In other words, to convey its point that the plain language of § 1447(d) creates plenary review of a remand order upon invocation of a federal officer removal basis, the Seventh Circuit was forced to modify that language with a clarifying parenthetical entirely absent from the statutory text.

Suncor Energy (U.S.A.) Inc., 965 F.3d at 805. We are similarly unwilling, when faced with an ambiguous provision, to force an interpretation in the name of simplicity. Instead, we will conduct a more holistic analysis.

Beginning with the overall purpose of the statute, we note that the Supreme Court has weighed in on § 1447 when answering a different question, so we are not starting our work from scratch. See Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224 (2007). We know that "[t]he authority of appellate courts to review district-court orders remanding removed cases to state court is substantially limited by [§ 1447]" and that if a district court says that it is remanding a case for lack of subject-matter jurisdiction (as it did here), we should only review whether that "characterization was colorable." Powerex Corp., 551 U.S. at 229, 234. Another strike against a broad reading yielding a searching review of the district court's remand order.

Turning to the structure of the provision, the point of § 1447(d), by its text, is to limit appellate review. The provision begins with a complete ban on our review of the remand order and then pivots to two precise exceptions. See § 1447(d) ("a remand order . . . is not reviewable"). This general ban is because, despite our best efforts, appeals can move at a glacial pace and "[l]engthy appellate disputes . . . would frustrate the purpose of § 1447(d)." Powerex Corp., 551 U.S. at 234. The oil companies tell us that it would not take much longer to review the entire order if we were already wading into the waters of the federal-officer removal question, but even if that were true here (and we are not confident it is) that does not change the section's purpose. See Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99 (1st Cir. 2001) ("[Section 1447(d)'s] limitation is intended to prevent prolonged litigation of the remand issue, and to minimize interference in state court proceedings by the federal courts, for reasons of comity.") (citation omitted).

Considering all of this, we are persuaded that to allow review of every alleged ground for removal rejected in the district court's order would be to allow § 1447(d)'s exception clause to swallow the general rule prohibiting review and, thus, a narrow construction is appropriate. See Suncor Energy (U.S.A.) Inc., 965 F.3d at 805 (interpreting the same provision and citing Comm'r of Internal Revenue v. Clark, 489 U.S. 726, 739 (1989) ("In construing

provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.")).

One more thing: we assume Congress is "'aware of the universality of th[e] practice' of denying appellate review of remand orders when Congress creates a new ground for removal." Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 128 (1995) (alteration in original) (citation omitted) (addressing § 1447(d)). The final feather in the cap of this analysis then is that Congress amended this section as recently as 2011 and yet again refrained from clearly permitting plenary review of remand orders.[3] See Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 (2011).

This is where the oil companies' Yamaha argument resurfaces. Prior to the 2011 amendment to § 1447(d), Yamaha interpreted "order" to mean everything decided by the district

[3] Prior to its most recent amendment, § 1447(d) provided:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447 (1996). Congress added the phrase "section 1442 or" to the exception clause and left the provision otherwise untouched.

court. 516 U.S. at 205. So, the reasoning goes, the relative Congressional inaction on § 1447(d) in 2011 was actually Congress ratifying the Yamaha understanding of the word "order" rather than the decades-long deluge of appellate court interpretations of § 1447 generally. See, e.g., Powerex Corp., 551 U.S. at 229; Christopher, 240 F.3d at 99. But Yamaha was interpreting the word "order" in a different provision, § 1292(b), and in a different procedural posture, an interlocutory appeal. No branch of statutory interpretation says that we should assume Congress is silently adopting court-determined definitions from other statutes when the law in question has its own long history of application and we are not going to plant that seed now.

To sum this up: we read § 1447(d) as prohibiting appellate review of district court orders remanding cases for lack of subject matter jurisdiction, except for the components of those orders, should they exist, where the district court rejects a defendant's attempt to remove a case under federal-officer removal or civil rights removal.

**Federal-Officer Removal**

With the question of our jurisdiction resolved, we turn to the merits that are within our purview: did the district court err when it concluded that it did not have subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1442(a)(1), the federal-officer removal statute? We review de novo a "district

court's decision to remand a case to state court," Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009), "and, thus, [the district court's] underlying conclusion[s]" as to subject matter jurisdiction, Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt., 585 F.3d 42, 47 (1st Cir. 2009).

Private actors sued in state court can remove the case to federal court where the private actor is "acting under [any federal officer], for any act under color of such office." 28 U.S.C. § 1442(a)(1); accord Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 486-87 (1st Cir. 1989). "Acting under" connotes "subjection, guidance, or control" and involves "an effort to assist, or to help carry out, the duties or tasks of the federal superior." Watson v. Phillip Morris Companies, Inc., 551 U.S. 142, 152 (2007) (citations omitted).

To succeed in their argument that federal-officer removal is proper in this case, the oil companies must show that they were acting under a federal officer's authority, that they will assert a colorable federal defense to the suit, and that there exists "a nexus" between the allegations in the complaint and conduct undertaken at the behest of a federal officer. Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999) (internal quotation marks and citations omitted). If the oil companies cannot

demonstrate all three of these elements, they cannot remove the case to federal court under § 1442.

To support their argument, the oil companies point us to three contracts with the federal government related to the production of oil and argue that they were "acting under" a federal officer because they "help[ed] the Government to produce an item that it needs." See Watson, 551 U.S. at 153. Specifically, these contracts involved (1) oil extraction from the Elk Hills Naval Petroleum Reserve, (2) oil extraction under the Outer Continental Shelf Land Act ("OCSLA"), and (3) CITGO fuel supply agreements. In the Elk Hills Reserve Contract, Standard Oil, a predecessor of Chevron, and the U.S. Navy entered into a contract whereby Standard would limit its extraction to ensure adequate reserves for the Navy, but Standard "could dispose of the oil they extracted as they saw fit." County of San Mateo v. Chevron Corp., 960 F.3d 586, 602 (9th Cir. 2020). In the OCSLA leases, some of the oil companies agreed to mineral leases with the U.S. Government to extract oil and natural gas from the Outer Continental Shelf, but there appears to be no "close supervision" of this extraction or production of oil "specially conformed to government use." See Suncor (U.S.A.), Inc., 965 F.3d at 822, 825. And finally, CITGO entered into a contract to provide oil to the Naval Exchange Service Command ("NEXCOM") service stations on naval bases. County of San Mateo, 960 F.3d at 600-01.

At first glance, these agreements may have the flavor of federal officer involvement in the oil companies' business, but that mirage only lasts until one remembers what Rhode Island is alleging in its lawsuit. Rhode Island is alleging the oil companies produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation campaign about the harmful effects of their products on the earth's climate. The contracts the oil companies invoke as the hook for federal-officer jurisdiction mandate none of those activities. See Camacho, 868 F.2d at 486 (jurisdiction clearly proper where defendants were under "express orders, control[,] and directions of federal officers"). The Elk Hills Reserve contract and OCSLA lease address extraction, not distribution or marketing, and the NEXCOM contract only implicates any of those activities on Naval bases, which are explicitly not a part of Rhode Island's case. There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer. Accordingly, we conclude that the district court properly found that there is no subject-matter jurisdiction under the federal-officer removal statute.

## CONCLUSION

Solely having appellate jurisdiction to review the district court's remand order to the extent that it denies federal-officer removal, we **affirm**. Costs awarded to Rhode Island.