# United States Court of Appeals
## For the First Circuit

No. 21-1566

MICHAEL J. MOORE; ROSE MOORE,

Plaintiffs, Appellees,

v.

ELECTRIC BOAT CORPORATION, d/b/a General Dynamics Electric Boat,

Defendant, Appellant,

CRANE CO.; ECKEL INDUSTRIES, INC.; FOSTER WHEELER ENERGY CORP.;
MELRATH GASKET, INC.; NIANTIC SEAL, INC.; P.I.C. CONTRACTORS,
INC.; TACO, INC.; VIMASCO CORPORATION; PACKING & INSULATION
CORPORATION,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Lynch, Kayatta, and Gelpí,
Circuit Judges.

Matthew S. Hellman, with whom Nancy Kelly, Sarah J. Clark,
Gordon Rees Scully Mansukhani LLP, and Jenner & Block LLP were on
brief, for appellant.
Michael L. Gorwitz, with whom S. Ann Saucer, John E. Deaton,
The Deaton Law Firm, LLC, and Fears Nachawati, PLLC were on brief,
for appellees.

January 31, 2022

**LYNCH**, **Circuit Judge**.  Electric Boat Corporation is a federal contractor which has built submarines for the United States Navy for more than 100 years, including the submarine involved in this case:  the USS Francis Scott Key.  Michael Moore, who was enlisted in the Navy, was assigned to work as an electronics technician aboard the USS Francis Scott Key from 1965 to 1969.  Decades after he was exposed to asbestos during construction of the submarine, Michael Moore and his wife Rose (collectively, "Moore") filed suit against Electric Boat and other defendants alleging the various state claims described further below.

In October 2020, Electric Boat removed the case to federal court under 28 U.S.C. § 1442, the federal officer removal statute.  In response, Moore filed a motion before the district court to remand to state court.  After full briefing, in July 2021, the district court granted Moore's remand motion, finding that Electric Boat had failed to satisfy the § 1442(a)(1) requirements for federal officer removal.  See Moore v. Crane Co., No. 20-cv-00466-LDA, 2021 WL 2719258, at *5 (D.R.I. July 1, 2021).

The district court interpreted the statute in a manner inconsistent with the 2011 congressional amendment to § 1442(a)(1).  Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545.  We reverse and hold that Electric Boat has established the statutory requirements for removal.

- 3 -

**I.**

**A.    Factual Background**

During the mid-1960s, Electric Boat built the USS Francis Scott Key for the Navy at its shipyard in Groton, Connecticut.  The Electric Boat shipyard operated "in accordance with government contracts, in conformance with military specifications, and under Navy oversight."  The Navy supervised Electric Boat's operations, had designated officials present at the Electric Boat shipyard to oversee Electric Boat's employees, and maintained a substantial presence at the shipyard, including offices, sleeping quarters, training centers, and other facilities.  The Navy oversaw every aspect of the design, construction, maintenance, and modernization of its submarines like the USS Francis Scott Key.

Michael Moore, who was serving in the Navy at the time, worked as an electronics technician aboard the USS Francis Scott Key from 1965 to 1969.  He alleges that he was exposed to asbestos and asbestos-containing products while at the "premises owned and/or controlled" by Electric Boat.  In September 2018, he was diagnosed with lung cancer caused by exposure to asbestos.

**B.    Procedural History**

In Rhode Island state court, Moore brought several claims against all defendants, including failure to warn, negligence, strict product liability, breach of warranty, and

conspiracy. As to Electric Boat specifically, Moore also alleged that Electric Boat "fail[ed] to provide safe equipment," "fail[ed] to provide adequate safety measures and protection," "fail[ed] to adequately warn . . . of the inherent dangers of asbestos," "fail[ed] to maintain . . . proper and safe condition[s]" on the premises, and "fail[ed] to follow and adhere" to state and federal laws and regulations.

After Electric Boat removed the case to federal court under § 1442(a)(1), Moore moved to remand to state court. Electric Boat opposed and submitted several exhibits in support of removal, including affidavits from Bradford Heil, a retired Electric Boat employee, and Admiral John B. Padgett, III, a retired Rear Admiral in the Navy. Padgett's affidavit stated that the Navy "directed, controlled and approved any warnings relating to health or safety to its servicepersons such as Mr. Moore." Moore did not submit any affidavits in response.

In July 2021, the district court granted the motion to remand. The district court first held that, to satisfy the requirements for removal under § 1442(a)(1), Electric Boat must demonstrate that "it was acting 'under color' of a federal official or agency" and that there was "a causal link between the 'acting under' restrictions and the cause of plaintiff's injury." Moore, 2021 WL 2719258, at *2. Applying this standard to the facts of the case, the court held that Electric Boat failed to satisfy the

- 5 -

§ 1442(a)(1) requirements because Electric Boat's proffered evidence "fail[ed] to address the premises theory of liability." Id. at *4.

The court also held that, to defend removal, Electric Boat would need to "demonstrate that the Navy controlled the warnings at the shipyard itself, to such an extent as to preclude Electric Boat from fulfilling its duty to warn." Id. (emphasis in original). The court then found that "there is no support here for the proposition that the Navy prohibited workplace warnings." Id. at *5.[1]

Electric Boat timely appealed.

**II.**

We review de novo the district court's jurisdictional determination on removal. See Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 73 (1st Cir. 2014). Where the district court resolves disputed issues of fact, we review those factual findings for clear error. See id.; Amoche v. Guar. Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). To the extent the district court found that the Navy did not control any and all warnings concerning the health

---

[1] Electric Boat vigorously disputes this finding. The record supports Electric Boat's contention that the Navy did, in fact, control any and all warnings that concerned the health and safety of servicepersons working on the USS Francis Scott Key and at the shipyard. Moore did not offer any evidence to the contrary.

and safety of servicepersons working on the USS Francis Scott Key and at the Electric Boat shipyard, that finding was clear error.

## A. Federal Officer Removal Under § 1442(a)(1)

The federal officer removal statute provides that a civil action commenced in state court may be removed if it is against or directed to:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphases added).

The district court erred by applying the "causal link" standard to federal officer removal, which is far narrower than the proper standard under § 1442(a)(1), as amended in 2011 when Congress changed the provision to reach removal based on a suit "for or relating to any act under color of [federal] office." See Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 (emphasis added); see Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286, 292-96 (5th Cir. 2020) (en banc) (rejecting the "causal connection" requirement and instead applying the "relating to" standard); Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 258 (4th Cir. 2017) (same).

Electric Boat bears the burden under § 1442(a)(1), see Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 n.13 (8th Cir. 1978), to establish: (1) that it was "acting under a federal officer's authority," Rhode Island v. Shell Oil Prods. Co., L.L.C., 979 F.3d 50, 59 (1st Cir. 2020), summarily vacated on other grounds, 141 S. Ct. 2666 (2021) (Mem.); (2) that the charged conduct was carried out "for or relating to" the asserted official authority, 28 U.S.C. § 1442(a)(1);[2] and (3) that it "will assert a colorable federal defense to the suit," Shell Oil Prods., 979 F.3d at 59.

**B.   Electric Boat Satisfies the Standard for Federal Officer Removal Under § 1442(a)(1)**

Moore does not dispute that Electric Boat has shown that it was "acting under a federal officer's authority."[3]  We focus on the second two requirements for removal.

---

[2]    We have also described the "relating to" requirement as a "nexus" between "the allegations in the complaint and conduct undertaken at the behest of a federal officer." Shell Oil Prods., 979 F.3d at 59.  This nexus requirement is not a causation requirement, as the district court erroneously held.  Moore, 2021 WL 2719258, at *4.

[3]    In the context of § 1442(a)(1), the Supreme Court has interpreted "acting under" a federal officer to contemplate a relationship where the private party engages in an effort "to assist, or to help carry out, the duties or tasks of the federal superior."  Watson v. Philip Morris Co., 551 U.S. 142, 151-52 (2007) (emphasis in original).  The relationship typically involves "subjection, guidance, or control." Id. at 151 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)).  And the words "acting under" are "broad" and "liberally construed."

1.  "For or relating to"

In 2011, Congress amended § 1442(a)(1) to reach removal based on a suit "for or relating to any act under color of [federal] office." See Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 (adding "or relating to" language to the provision).[4]  Circuits have consistently given this requirement a broad reading and held that no causal link is required.  See Latiolais, 951 F.3d at 292-96 ("[W]e overrule Bartel[ v. Alcoa Steamship Co., 805 F.3d 169 (5th Cir. 2015)] and its progeny to

---

Id. at 147 (third quoting Colorado v. Symes, 286 U.S. 510, 517 (1932)).

Courts have consistently held that the "acting under" requirement is easily satisfied where a federal contractor removes a case involving injuries arising from a product manufactured for the government.  See Genereaux v. Am. Beryllia Corp., 577 F.3d 350, 357 n.9 (1st Cir. 2009) (recognizing federal officer removal based on defendant's assertion that it was "acting under" a federal officer because "the beryllium-containing products it supplied to Raytheon were used in manufacturing 'military hardware'"); see also Latiolais, 951 F.3d at 291 (holding that federal contractor that repaired Naval vessels was "acting under" a federal officer's authority); Sawyer, 860 F.3d at 255 (holding that federal contractor that assembled boilers for Naval vessels was "acting under" a federal officer's authority); Papp v. Fore-Kast Sales Co., 842 F.3d 805, 813 (3d Cir. 2016) (holding that federal contractor that constructed military aircrafts for the government was "acting under" a federal officer's authority).

[4]     The amended language "broaden[ed] the universe of acts that enable Federal officers to remove to Federal court."  H.R. Rep. No. 112-17, at 6 (2011).  The Supreme Court has stated in other contexts that the ordinary meaning of the phrase "relating to" is "a broad one," holding that it normally means in "association with or connection with."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992) (third quoting Black's Law Dictionary 1158 (5th ed. 1979)).

- 9 -

the extent that those cases erroneously relied on a 'causal nexus' test after Congress amended section 1442(a) to add 'relating to.'" (footnote omitted)); Sawyer, 860 F.3d at 258 ("The district court imposed a stricter standard of causation than that recognized by the statute . . . which is only that the charged conduct relate to an act under color of federal office." (emphasis in original)). The First Circuit nexus standard is not a causal requirement and is not to be understood as anything more than a "related to" nexus. See Shell Oil Prods., 979 F.3d at 59.

Any single claim is independently sufficient to satisfy the "for or relating to" requirement under § 1442(a)(1). See Baker v. Atl. Richfield Co., 962 F.3d 937, 945 (7th Cir. 2020); C.A. Wright & A.R. Miller, Federal Practice and Procedure § 3726 (4th ed., Apr. 2021 update) ("Because Section 1442(a)(l) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction."). Here, all of Moore's claims against Electric Boat are "for or relating to" Electric Boat's actions taken under color of federal office.

Moore brought claims against all defendants for failure to warn, negligence, strict product liability, breach of warranty, and conspiracy. The Navy assigned Moore, an enlisted Navy serviceman, to the Electric Boat shipyard where Electric Boat built

- 10 -

the USS <u>Francis Scott Key</u> while "acting under" the authority of naval officers and in relation to that authority. The Navy oversaw every aspect of the design, construction, maintenance, and modernization of the submarine, including the use of asbestos in the construction of the submarine. The undisputed record demonstrates that Moore's claims clearly "relate to" Electric Boat's contracted work while "acting under" the Navy.

Moore tries to defend against removal with more specific allegations that Electric Boat in particular failed to provide safe equipment, provide adequate safety measures and protection, maintain proper and safe conditions on the premises, and follow state and federal laws and regulations. The Navy dictated the use of asbestos, workplace safety measures, and the posting of warnings both on the submarine and at the Electric Boat shipyard. Thus, all of Moore's claims as to Electric Boat, too, clearly "relate to" Electric Boat's actions taken while "acting under" color of federal office. <u>See</u> <u>Latiolais</u>, 951 F.3d at 296 (holding that claims for failure to warn about asbestos and failure to take measures to prevent exposure were "connected with the installation of asbestos during the refurbishment of the USS <u>Tappahannock</u> . . . pursuant to directions of the U.S. Navy," and thus, the "civil action relates to an act under color of federal office"); <u>Sawyer</u>, 860 F.3d at 258 (explaining that "Foster Wheeler's alleged failure

to give warnings to Shipyard employees is therefore clearly related to Foster Wheeler's performance of its contract with the Navy.").

As to the claim that Electric Boat failed to adequately warn of the dangers of asbestos, the district court and Moore posit a purported distinction between "premises liability" and liability arising from harms caused from constructing the submarine itself. We doubt that a premises liability claim is different from Moore's other claims because the premises were under Navy control. At oral argument, Moore's counsel conceded that there is no assertion that Moore worked in an isolated part of the shipyard, outside Navy control. Nor is there any assertion that Moore's injuries did not stem from the various activities mandated by the Navy.

The district court applied the "causal link" standard rather than the "related to" nexus standard to its analysis of the premises liability claims. The record does not support the district court's statement that the Navy did not preclude Electric Boat from posting additional workplace warnings. Even assuming it does, § 1442(a)(1) does not "demand[] a showing of a specific government direction," which goes well beyond the "relating to" requirement. Sawyer, 860 F.3d at 258. Moore's premises liability claims are clearly "related to" Electric Boat's construction of the USS Francis Scott Key which took place while "acting under" the Navy because the Navy oversaw and directed the workplace safety

- 12 -

measures and the posting of warnings at the Electric Boat shipyard premises.

2. "Colorable federal defense"

The district court did not decide whether Electric Boat has a "colorable defense" but did observe that the "burden is low," and the requirement "has generally not proven an obstacle in similar litigation." Moore, 2021 WL 2719258, at *2 n.5. Moore asks that if we find that Electric Boat has satisfied the "relating to" requirement, this matter should be remanded to the district court. Moore does not identify any unresolved findings of fact that would be essential to resolving this question. Based on the record, it is clear that there are multiple colorable defenses available to Electric Boat. We may reach the issue as a matter of discretion. See Singleton v. Wulff, 428 U.S. 106, 121 (1976).

Under § 1442(a)(1), a "colorable federal defense" need not be "clearly sustainable." Willingham v. Morgan, 395 U.S. 402, 407 (1969). The Supreme Court has rejected a "narrow, grudging interpretation" of the requirement. Id. Rather, a federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." Latiolais, 951 F.3d at 297 (quoting Zeringue v. Crane Co., 846 F.3d 785, 790 (5th Cir. 2017)). Electric Boat asserts several colorable defenses to the claims against it.

- 13 -

Electric Boat first asserts the government contractor immunity defense outlined in Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988). Courts applying Boyle to failure-to-warn cases have held that the immunity applies where: "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Sawyer, 860 F.3d 249, 256 (quoting Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996)) (alteration in original).

Electric Boat offered evidence colorably showing that all three Boyle conditions have been met in this case. Electric Boat submitted affidavits stating that the Navy controlled the use and content of the warnings on the USS Francis Scott Key and at the Electric Boat shipyard. Moore does not dispute these facts. The affidavits support the argument that the Navy "exercised its discretion and approved certain warnings" related to asbestos. The affidavits also support, and Moore does not dispute, that Electric Boat complied with the Navy's requirements and "provided the warnings required by the government." And Electric Boat presented the colorable argument that there were no dangers "that were known to the contractor but not to the government" because the government knew more than Electric Boat about asbestos-related

- 14 -

hazards and safety measures.  See Sawyer, 860 F.3d at 256 ("Foster Wheeler credibly demonstrated . . . that the Navy's knowledge of asbestos-related hazards exceeded Foster Wheeler's during the relevant time period."); Latiolais, 951 F.3d at 298 ("Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures.").

In light of the evidence submitted by Electric Boat, the government contractor immunity defense is not "wholly insubstantial and frivolous."  Electric Boat has made at least a colorable showing that the Navy exercised discretion in requiring Electric Boat to provide certain warnings while fully aware of the dangers of asbestos.  Whether or not the government prohibited Electric Boat from posting additional warnings speaks to the merits of the defense but does not undermine the colorability of the immunity defense.

Electric Boat also asserts that it is entitled to derivative sovereign immunity under Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940).  Under Yearsley, "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power."  Cunningham v. Gen. Dynamics Info.

Tech., Inc., 888 F.3d 640, 643 (4th Cir. 2018) (quoting In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 342 (4th Cir. 2014)).

Electric Boat likewise has made a colorable showing that it satisfied the Yearsley requirements to assert the derivative sovereign immunity defense. Electric Boat's proffered evidence colorably shows that it acted at the direction of the Navy, which "authorized [Electric Boat's] actions." And the Navy clearly "acted within its constitutional power" to contract with Electric Boat to build submarines.

Electric Boat lastly asserts that it is protected by the Federal Tort Claims Act's combatant activities exception. See 28 U.S.C. § 2680(j) (barring suit for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war"); see also Saleh v. Titan Corp., 580 F.3d 1, 9 (D.C. Cir. 2009) ("During wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted.").

Electric Boat built and maintained submarines, including the USS Francis Scott Key, during the Vietnam War. Those submarines were used by the Navy in its "combatant activities . . . during time of war." Thus, Electric Boat has presented at least

a colorable argument in support of the combatant activities exception.

## III.

Reversed and Remanded.