**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-1530**

_____

JANYA SAWYER, Representative of the Estate of Joseph W. Morris; GARNETTE MORRIS, Individually and as Surviving Spouse of Joseph W. Morris; NANCY PIKE, Surviving Child of Joseph W. Morris; EDWARD MORRIS, Surviving Child of Joseph W. Morris; WAYNE MORRIS, Surviving Child of Joseph W. Morris; JOANNE TRAYNOR, Surviving Child of Joseph W. Morris,

　　　　　Plaintiffs - Appellees,

　　v.

FOSTER WHEELER LLC,

　　　　　Defendant - Appellant,

　　and

UNION CARBIDE CORPORATION; JOHN CRANE-HOUDAILLE, INC., f/k/a Crane Packing Company; OWENS-ILLINOIS GLASS CO., f/k/a Owens-Illinois, Inc.; FOSTER WHEELER CORPORATION; HOPEMAN BROTHERS, INC.; UNIVERSAL REFRACTORIES COMPANY; SELBY, BATTERSBY & COMPANY; CBS CORPORATION, a Delaware Corporation, f/k/a Viacom, Inc., f/k/a CBS Corporation, a Pennsylvania Corp., f/k/a Westinghouse Electric Corp.; J.H. FRANCE REFRACTORIES CO.; THE GOODYEAR TIRE & RUBBER CO.; MCIC, INC., and its Remaining Director of Trustees, Robert I. McCormick, Elizabeth McCormick and Patricia Shunk; METROPOLITAN LIFE INSURANCE CO.; GENERAL ELECTRIC COMPANY; BAYER CROPSCIENCE, INC., Individually and as Successor in Interest to Benjamin Foster Co., Amchem Products, Inc., H.B. Fuller Co., Aventis CropScience USA, Inc., Rhone-Poulenc AG Company, Inc., Rhone-Poulenc, Inc., Rhodia Inc.; INTERNATIONAL PAPER COMPANY, Individually and as Successor in Interest to Champion International Corporation, U.S. Plywood Corp.; COOPER INDUSTRIES, INC., Individually and as Successors in Interest to Crouse-Hinds Co.; FERRO ENGINEERING, Division of On Marine Services Company; FOSECO, INC.; WAYNE MANUFACTURING

CORPORATION; LOFTON CORPORATION, as Successor-in-Interest to Wayne Manufacturing Corporation, Hopeman Manufacturing Corporation; SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company; GREENE, TWEED & CO., Individually and as Successor in Interest to Palmetto, Inc.; WALLACE & GALE ASBESTOS SETTLEMENT TRUST, Successor to the Wallace & Gale Company; CROWN, CORK & SEAL CO., INC.; GEORGIA-PACIFIC, LLC, Ind/Successor to BestWall Gypsum Co.; KOPPERS COMPANY, INC.; PFIZER, INC.; PHELPS PACKING & RUBBER CO., Phelps Industrial; PARAMOUNT PACKING & RUBBER, INC.; LLOYD E. MITCHELL, INC.; PECORA CORPORATION, Individually and as Successor in Interest to Pecora, Inc., New Pecora Corp.,

        Defendants,

             v.

GENERAL REFRACTORIES CO.; A.W. CHESTERTON COMPANY; MANVILLE TRUST PERSONAL INJURY SETTLEMENT TRUST; SB DECKING, INC., f/k/a Selby, Battersby & Co., Inc.; UNIROYAL, INC.,

        Third Party Defendants.

―――――――――――

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Chief District Judge. (1:16-cv-00118-CCB)

―――――――――――

Argued: May 10, 2017                          Decided: June 22, 2017

―――――――――――

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

―――――――――――

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Duncan joined.

―――――――――――

**ARGUED:** Erik David Nadolink, WHEELER TRIGG O'DONNELL, LLP, Denver, Colorado, for Appellant. Jeffrey John Utermohle, LAW OFFICES OF PETER G. ANGELOS, P.C., Baltimore, Maryland, for Appellees. **ON BRIEF:** Patrick C. Smith, John C. Ruff, DEHAY & ELLISTON, LLP, Baltimore, Maryland, for Appellant.

William G. Minkin, Demetrios A. Karas, LAW OFFICES OF PETER G. ANGELOS, P.C., Baltimore, Maryland, for Appellees.

NIEMEYER, Circuit Judge:

In this appeal, we are presented with the single issue of whether a government contractor was entitled to remove a state tort action to federal court under 28 U.S.C. § 1442(a)(1) based on the contractor's assertion that it had a colorable federal defense of government-contractor immunity.

Joseph Morris worked as shipbuilder at the Bethlehem Steel Sparrows Point Shipyard, beginning in 1948 and continuing into the 1970s. He died of mesothelioma in 2015. Morris' family and the personal representative of his estate commenced this action against Foster Wheeler LLC and other defendants in a Maryland state court, alleging that Morris' death was caused by exposure to asbestos while assembling boilers at the Shipyard and that the defendants failed to warn him of the dangers of asbestos, which was a component of the boilers.

Foster Wheeler, a manufacturer of the boilers that Morris and other Shipyard employees assembled for use aboard U.S. Navy vessels, removed this action to federal court pursuant to 28 U.S.C. § 1442(a)(1), claiming that it manufactured the boilers under a contract with the Navy and therefore possessed a colorable federal defense of government-contractor immunity. The district court, however, granted the plaintiffs' motion to remand the case to state court, concluding that Foster Wheeler did not make a sufficient showing that it had a colorable federal defense and that, in any event, the conduct for which it was sued was not causally connected to official authority.

On appeal, we conclude that the district court applied the wrong standard for determining removability under § 1442(a)(1), and, because we conclude that Foster

4

Wheeler met the statute's requirements, we reverse. But because the court left open the question of whether Foster Wheeler's removal was timely noticed, we remand the case to the district court to make that determination in the first instance.

I

In June 2015, Morris' surviving spouse, his children, and the representative of his estate commenced this action against Foster Wheeler and other defendants in the Circuit Court for Baltimore City, Maryland, alleging — in claims for strict liability, breach of warranty, and negligence, among others — that the defendants had failed to warn Morris of the dangers of asbestos. They asserted that Morris was exposed to asbestos while working in the boiler shop at the Sparrows Point Shipyard from 1948 through the 1970s and that his exposure caused the mesothelioma that killed him in 2015. In response to interrogatories, the plaintiffs explained in more detail that Morris and other Shipyard employees assembled boilers containing asbestos at the Shipyard that had been manufactured offsite, including ones manufactured by Foster Wheeler.

Foster Wheeler filed a notice of removal pursuant to 28 U.S.C. § 1446, claiming authority for removal under § 1442(a)(1), which provides for removal by federal officials and their agents in specified circumstances. In its notice, Foster Wheeler stated that, during the relevant time period, it manufactured boilers for the U.S. Navy under the Navy's strict specifications; that its boilers were sent in pieces to the Sparrows Point Shipyard for assembly; that Morris and his fellow employees assembled the boilers at the Shipyard; and that the boilers contained asbestos. It asserted, moreover, that "in the

5

manufacture and sale of boilers and auxiliary equipment for the Navy, including all aspects of warnings associated with that equipment, [it] was acting under an officer or agency of the United States" and therefore had a colorable defense of government-contractor immunity, entitling it to remove the case to federal court to have that defense heard there.

In support of its notice, Foster Wheeler submitted an affidavit from J. Thomas Schroppe, a former Foster Wheeler employee who, from 1962 to 1999, rose through the ranks of Foster Wheeler as an engineer and eventually became president of its subsidiary Boiler Corporation. Schroppe, who stated that he was "personally involved" in the Navy's procurement contracts for boilers "at all the various stages of development," described "the contract process from the perspective of Foster Wheeler as the vendor, as well as the levels of interaction between Foster Wheeler and the Navy." He stated that Foster Wheeler designed boilers to match highly detailed ship specifications and military specifications provided by the Navy, and that "deviations from these specs were not acceptable." He also spoke to the "intense direction and control" that the Navy exercised "over all written documentation to be delivered with its naval boilers," explaining:

> The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy.

> Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures,

6

and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

The plaintiffs filed a motion to remand the case to state court, arguing that Foster Wheeler's notice of removal was untimely because it was filed more than 30 days after Foster Wheeler learned that it had a possible federal defense and that, in any event, it failed to meet the substantive requirements of § 1442(a)(1). With respect to those requirements, the plaintiffs argued that Foster Wheeler's evidence of the Navy's control over the design of its boilers and warning labels did not establish a federal defense to their particular theory of liability. As the plaintiffs summarized:

> The liability asserted by Plaintiffs against Foster Wheeler is based on a failure to warn . . . relating to the erection of boilers. The boilers were not constructed upon U.S. Naval Ships, but at an off-ship boiler shop, under the direction of Foster Wheeler personnel, and only later transported and installed upon U.S. Naval ships. Navy specifications in no way restricted Foster Wheeler's ability to warn individuals constructing the boilers of the presence of asbestos and their need to take proper precautions.

They therefore claimed that Foster Wheeler failed to meet any of the three requirements for removal under § 1442(a)(1) — it did not act under the direction of a federal officer; it did not possess a colorable federal defense; and it did not engage in government-directed conduct causally related to the plaintiffs' claims.

In response to the plaintiffs' motion to remand, Foster Wheeler submitted a 2006 affidavit from Lawrence Stilwell Betts, a retired Navy Captain and medical consultant, which had been given in connection with a different action. Based on contemporary medical literature, Betts stated that "the Navy was well aware of the health hazards associated with the use of asbestos from the early 1920s" and that the Navy's information

7

"with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, far exceeded any information that possibly could have been provided by a boiler manufacturer."

The district court granted the plaintiffs' motion to remand. First, it acknowledged that the timeliness of Foster Wheeler's notice of removal was "a close question," but it assumed the removal's timeliness because of its conclusion that Foster Wheeler failed to meet the substantive requirements of § 1442(a)(1). As to those requirements, the court stated that, while Foster Wheeler had shown through affidavits "that the Navy provided Foster Wheeler with detailed specifications governing warnings and written information that accompanied Foster Wheeler boilers," there was no "evidence to show that the Navy exercised any discretion over Foster Wheeler's ability to warn its workers in the Shipyard's boiler shop." Furthermore, the court explained, "Foster Wheeler [did] not claim that it proposed any type of warning to the Navy concerning asbestos exposure in the Shipyard's boiler shop, much less that the Navy considered and rejected such a warning." Reasoning from those observations, the court concluded that Foster Wheeler lacked a colorable federal defense of government-contractor immunity with respect to the plaintiffs' theory of liability and that, "[f]or similar reasons," there was "no causal connection between the plaintiffs' claims" and the aspects of Foster Wheeler's conduct that conformed to government direction.

Foster Wheeler filed this appeal from the district court's remand order dated April 20, 2016, as authorized by 28 U.S.C. § 1447(d).[*]

II

Section 1442, commonly referred to as the "federal officer removal statute," authorizes the removal to federal court of any "civil action or criminal prosecution" commenced in a state court against

> any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

28 U.S.C. § 1442(a)(1). Thus, a private defendant, such as a government contractor, who seeks to remove a case under § 1442(a)(1), must show: (1) that it "act[ed] under" a federal officer, *see*, *e.g.*, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); (2) that it has "a colorable federal defense," *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); and (3) that the charged conduct was carried out for on in relation to the asserted official authority, 28 U.S.C. § 1442(a)(1). In imposing these requirements, the statute aims "to protect the

---

[*] The parties subsequently filed a series of motions related to the record on appeal. The plaintiffs moved to strike the affidavit of retired Navy Rear Admiral Benjamin Lehman, who apparently died in April 2013, and moved to supplement the record with his obituary. Lehman's affidavit contained information about the Navy's control over Foster Wheeler's design and labeling of its boilers. Foster Wheeler contested the plaintiffs' motions, and additionally sought to supplement the record with Navy "Mil Specs" that covered warnings affixed to ship boilers. Because we think that this case can readily be decided without use of the affidavit that the plaintiffs seek to strike and without any of the material that either party wishes to add to the record, we find it unnecessary to expand the record at this stage of the proceedings.

9

Federal Government from . . . interference with its 'operations,'" *Watson*, 551 U.S. at 150 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)), primarily by providing "a federal forum for a federal defense," *Ripley*, 841 F.3d at 210.

With the statute's requirements in hand, we address whether Foster Wheeler satisfied each of them.

A

First, there can be no question that Foster Wheeler was a "person acting under" the Navy when it constructed the boilers with asbestos that allegedly harmed Morris. When a private entity is involved, the Supreme Court has interpreted the phrase "acting under" to contemplate a relationship where the government exerts some "subjection, guidance, or control," *Watson*, 551 U.S. at 151 (quoting *Webster's New International Dictionary* 2765 (2d ed. 1953)), and where the private entity engages in an effort "to assist, or to help carry out, the duties or tasks of the federal superior," *id*. at 152 (emphasis omitted). In *Watson*, the Court distinguished relationships where private entities are merely subject to federal regulation — holding that mere regulation of private entities cannot justify removal under the statute — from the relationships where the private entity contracts with the government to fulfill a government need. As the Court explained:

> The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. . . . Moreover, at least arguably, [a contractor] perform[s] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.

*Id*. at 153–54. In addition, the Court stated that the phrase "acting under" is "broad" and is to be "liberally construed" in favor of the entity seeking removal. *Id*. at 147.

Accordingly, courts have unhesitatingly treated the "acting under" requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*. *See Hurley v. CBS Corp.*, 648 Fed. Appx. 299, 303 (4th Cir. 2016) (per curiam) ("GE is a 'person acting under' a federal officer because it was acting under a valid government contract at all times relevant to the litigation"); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) ("Papp's allegations are directed at actions Boeing took while working under a federal contract to produce an item the government needed, to wit, a military aircraft, and that the government otherwise would have been forced to produce on its own").

In this case, the record shows that during Morris' tenure as an employee at the Sparrows Point Shipyard, Foster Wheeler manufactured boilers under contracts with the U.S. Navy for use on its vessels. Given the Supreme Court's direction that we construe the statute liberally and the holdings of courts that have followed that direction, Foster Wheeler's status as a Navy contractor readily satisfies the requirement that it have acted under the Navy, as used in § 1442(a)(1).

B

Second, we conclude that Foster Wheeler has asserted a colorable federal defense — the defense of government-contractor immunity — to the plaintiffs' claims.

11

The Supreme Court first articulated the government-contractor immunity defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), to prevent the imposition of state tort liability "for design defects in military equipment" when three requirements are met:

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id*. at 512.

As the district court recognized, the defense in *Boyle* can apply not only to a "design defect" claim, but also to a claim like that asserted here — one based on Foster Wheeler's alleged *failure to warn* Morris about the dangers of asbestos. As we explained in *Ripley*, imposing failure-to-warn liability on a contractor could produce the same conflict with federal policy that the Supreme Court sought to prevent in *Boyle*. *See* 841 F.3d at 211; *see also In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 629 (2d Cir. 1990) ("When a federal contract and state tort law give contrary messages as to the nature and content of required product warnings, they cause the sort of conflict *Boyle* found so detrimental to the federal interest in regulating the liabilities of military contractors").

The courts applying *Boyle* to failure-to-warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the

12

government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir. 1996); *see also*, *e.g.*, *Jowers v. Lincoln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Under this formulation, which we also now adopt, the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided. *See*, *e.g.*, *Tate*, 555 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings"). Where "the government chooses its own warnings," rather than merely approves of a contractor's, it has "certainly" exercised the requisite discretion to support a colorable defense for the contractor. *Oliver*, 96 F.3d at 1004; *see also Tate*, 55 F.3d at 1157.

In this case, Foster Wheeler satisfied all three of the criteria for showing a colorable government-contractor defense in failure-to-warn cases. *First*, Foster Wheeler showed that the Navy "exercised intense direction and control over all written documentation to be delivered with its naval boilers," including those manufactured by Foster Wheeler. Thomas Schroppe's affidavit states that "Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel beyond those required by the Navy." *Second*, Foster Wheeler actually gave the warnings that were required by the Navy. Schroppe's affidavit describes a rigorous inspection process and indicates that the Navy would notice and penalize any deviation. And *third*, Foster

13

Wheeler credibly demonstrated, with Lawrence Betts' affidavit, that the Navy's knowledge of asbestos-related hazards exceeded Foster Wheeler's during the relevant time period. Indeed, several other courts have cited the same affidavit as supporting a finding that the government contractor did not withhold risk-related information of which the military was unaware. *See*, *e.g.*, *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) (asbestos MDL action). Thus, Foster Wheeler has made at least a colorable showing that the government exercised discretion in requiring Foster Wheeler to provide certain notices and warnings, having full knowledge of the dangers involved. And the fact that the government did not prohibit Foster Wheeler from giving additional warnings — and may not even have considered requiring additional warnings — does not undermine the colorability of the immunity defense. *See Oliver*, 96 F.3d at 1004 n.8; *Tate*, 55 F.3d at 1157.

The district court, in concluding that Foster Wheeler did not demonstrate a colorable federal defense as to the plaintiffs' negligence claim, applied a different standard that does not follow the established criteria. It found that, even though the Navy "provided Foster Wheeler with detailed specifications governing warnings and written information that accompanied Foster Wheeler boilers," the fact that the Navy did not consider *additional* warnings to employees was fatal to Foster Wheeler's defense. Specifically, the court explained that, because the warnings that Foster Wheeler could have given employees in the workplace were not prohibited by the Navy, and because Foster Wheeler did not propose and the Navy did not reject the giving of such warning, the defense does not apply, as it "does not shield defendants where the government might

14

have exercised its discretion and final authority but did not." (Internal quotation marks and citation omitted). The district court's clear implication is that, unless the government explicitly regulated all possible warnings, Foster Wheeler could not have a colorable federal defense of immunity. But this reasoning overlooks the fact that, in specifying some warnings in response to the known dangers of asbestos, the government necessarily exercised discretion in not requiring additional warnings. *See Oliver*, 96 F.3d at 1004; *Tate*, 55 F.3d at 1157. It is this exercise of governmental discretion that, under the reasoning of *Boyle*, supports a defense for federal contractors who execute it.

Moreover, the district court failed to recognize, even on the terms of its own analysis, that removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case. *See* 28 U.S.C. § 1442(a) (allowing removal of "[a] civil action . . . commenced in a State court . . . for or relating to *any act* under color of [federal] office" (emphasis added)); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.7 (6th Cir. 2010) (affirming denial of remand and noting that "§ 1442 authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency" (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 3726, at 275 (4th ed. 2009))). In this case, the plaintiffs included, among others, a products-liability claim based on faulty warning *with respect to the boilers* themselves, which the district court treated as distinct from other warnings (or the lack thereof) given to employees. *See*, *e.g.*, *May v. Air & Liquid Sys. Corp.*, 139 A.3d 984, 988 (Md. 2015) (noting that under Maryland law a failure-to-warn claim may be brought under either a negligence or strict liability theory); *Phipps v.*

15

*General Motors Corp.*, 363 A.2d 955, 958 (Md. 1976) (noting that a strict liability claim focuses "not on the conduct of the manufacturer but rather on the product itself"). As the district court conceded, the warnings with respect to the boilers themselves were comprehensively mandated by the Navy, and it therefore follows that the plaintiffs' products-liability claim, even under the district court's analysis, is subject to a colorable government-contractor defense, thereby supporting removal.

C

Addressing the third requirement, we conclude that Foster Wheeler has established a sufficient connection between the charged conduct and asserted official authority. While the statute requires that the act in question be "for or relating to" the federal office, 28 U.S.C. § 1442(a)(1), the district court applied a requirement for a *strict causal connection* between the two.

Before 2011, the contractor had to establish that the suit against it was "*for* a[n] act under color of office," *Acker*, 527 U.S. at 431 (alterations in original) (quoting 28 U.S.C. § 1442(a)(3) (1994)), which the Supreme Court then characterized as a "causal connection between the charged conduct and the asserted official authority," *id.* (internal quotation marks omitted). But even then, the Court rejected "narrow, grudging interpretation[s] of the statute, recognizing that one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id.* (internal quotation marks omitted). The Court explained, "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of

16

the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection." *Id.* at 432 (internal quotation marks and citation omitted).

But in 2011, Congress amended § 1442(a)(1) to cover actions "for *or relating to* any act under color of [federal] office," adding the words "or relating to." Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. This new language "broaden[ed] the universe of acts" that enable federal removal, H.R. Rep. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425, such that there need be only "'a *connection or association* between the act in question and the federal office.'" *Papp*, 842 F.3d at 813 (emphasis added) (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Assoc.*, 790 F.3d 457, 471 (3d Cir. 2015)).

Foster Wheeler has amply shown a sufficient "connection or association" in this case. As Foster Wheeler explains, the Navy dictated the content of warnings on Foster Wheeler's boilers, and Foster Wheeler complied with the Navy's requirements. That relationship was sufficient to connect the plaintiffs' claims, which fault warnings that were not specified by the Navy, to the warnings that the Navy specified and with which Foster Wheeler complied. These claims undoubtedly "relat[e] to" all warnings, given or not, that the Navy determined in its discretion.

The district court imposed a stricter standard of causation than that recognized by the statute. It concluded that "[b]ecause no federal officer provided any direction regarding whether to warn Foster Wheeler's workers in the shipyard's boiler shop about asbestos, Foster Wheeler has not established the necessary causal nexus between their

17

actions and the plaintiffs' claims." In demanding a showing of a specific government direction, however, the district court went beyond what § 1442(a)(1) requires, which is only that the charged conduct *relate to* an act under color of federal office.

The record in this case shows that the Navy was aware of the dangers of asbestos; that it required the use of asbestos in boilers for which it contracted with Foster Wheeler to manufacture; that it provided for a comprehensive set of warnings, but not all possible warnings; and that Foster Wheeler complied with the Navy's requirements. Foster Wheeler's alleged failure to give warnings to Shipyard employees is therefore clearly related to Foster Wheeler's performance of its contract with the Navy.

\* \* \*

In sum, Foster Wheeler in this case satisfied all three of § 1442(a)(1)'s requirements. It plausibly asserted that it was acting under the Navy when it manufactured boilers; that it possessed a colorable government-contractor defense to the plaintiffs' claims that it allegedly failed to give some warnings in connection with its manufacture of those boilers; and that the plaintiffs' claims are related to Foster Wheeler's government-directed conduct. Accordingly, we reverse the district court's conclusion that Foster Wheeler did not meet the substantive requirements of § 1442(a)(1). Permitting Foster Wheeler to remove this case serves the overarching policy of giving government contractors a federal forum in which to present their federal immunity defense and thereby avoiding possible state court hostility to the defense that could undermine federal interests.

18

Because the district court addressed only the substantive requirements of § 1442(a)(1) before remanding the case to state court, it never addressed the question of whether Foster Wheeler's notice of removal was timely. Accordingly, in view of our conclusions, we remand this case to the district court to allow it, in the first instance, to determine the timeliness of Foster Wheeler's removal.

REVERSED AND REMANDED

19