# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued May 8, 2023        Decided December 19, 2023

No. 22-7163

DISTRICT OF COLUMBIA,
APPELLEE

v.

EXXON MOBIL CORPORATION, ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01932)

---

*Kannon K. Shanmugam* argued the cause for appellants. With him on the briefs were *Theodore J. Boutrous, Jr.*, *Thomas G. Hungar*, *Justin Anderson*, *William T. Marks*, *Theodore V. Wells, Jr.*, *Daniel J. Toal*, *David C. Frederick*, *Grace W. Knofczynski*, *Daniel S. Severson*, *James W. Cooper*, *Ethan Shenkman*, *Nancy G. Milburn*, *Diana E. Reiter*, *John D. Lombardo*, and *Jonathan W. Hughes*.

*Theodore E. Rokita*, Attorney General, Office of the Attorney General for the State of Indiana, *Thomas M. Fisher*, Solicitor General, *James A. Barta*, Deputy Solicitor General, *Steve Marshall*, Attorney General, Office of the Attorney

General for the State of Alabama, *Treg Taylor*, Attorney General, Office of the Attorney General for the State of Alaska, *Tim Griffin*, Attorney General, Office of the Attorney General for the State of Arkansas, *Christopher M. Carr*, Attorney General, Office of the Attorney General for the State of Georgia, *Kris Kobach*, Attorney General, Office of the Attorney General for the State of Kansas, *Daniel Cameron*, Attorney General, Office of the Attorney General for the Commonwealth of Kentucky, *Lynn Fitch*, Attorney General, Office of the Attorney General for the State of Mississippi, *Austin Knudsen*, Attorney General, Office of the Attorney General for the State of Montana, *Michael T. Hilgers*, Attorney General, Office of the Attorney General for the State of Nebraska, *Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Sean D. Reyes*, Attorney General, Office of the Attorney General for the State of Utah, *Bridget Hill*, Attorney General, Office of the Attorney General for the State of Wyoming, were on the brief for *amici curiae* Indiana and 13 Other States in support of appellants.

*Andrew R. Varcoe*, *Stephanie A. Maloney*, *William M. Jay*, and *Andrew Kim*, were on the brief for *amicus curiae* the Chamber of Commerce of the United States of America in support of appellants.

*Ashwin P. Phatak*, Principal Deputy Solicitor General, Office of the Attorney General for the District of Columbia, argued the cause for appellee.  With him on the brief were *Hassan A. Zavareei*, *Anna C. Haac*, *Victor M. Sher*, *Brian L. Schwalb*, Attorney General, Office of the Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Lucy E. Pittman*, Senior Assistant Attorney General.

*Deepak Gupta* was on the brief for *amici curiae* Law Professors in support of appellee.

*Alison S. Gaffney* and *Daniel P. Mensher* were on the brief for *amici curiae* Robert Brulle, et al. in support of appellee.

*Sathya S. Gosselin* was on the brief for *amici curiae* the National League of Cities, et al. in support of appellee.

*Letitia James*, Attorney General, Office of the Attorney General for the State of New York, *Barbara D. Underwood*, Solicitor General, *Matthew W. Grieco*, Senior Assistant Solicitor General, *Rob Bonta*, Attorney General, Office of the Attorney General for the State of California, *William Tong*, Attorney General, Office of the Attorney General for the State of Connecticut, *Kathleen Jennings*, Attorney General, Office of the Attorney General for the State of Delaware, *Anne E. Lopez*, Attorney General, Office of the Attorney General for the State of Hawai'i, *Kwame Raoul*, Attorney General, Office of the Attorney General for the State of Illinois, *Aaron M. Frey*, Attorney General, Office of the Attorney General for the State of Maine, *Anthony G. Brown*, Attorney General, Office of the Attorney General for the State of Maryland, *Andrea Joy Campbell*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Dana Nessel*, Attorney General, Office of the Attorney General for the State of Michigan, *Keith Ellison*, Attorney General, Office of the Attorney General for the State of Minnesota, *Matthew J. Platkin*, Attorney General, Office of the Attorney General for the State of New Jersey, *Raul Torrez*, Attorney General, Office of the Attorney General for the State of New Mexico, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Michelle A. Henry*, Attorney General, Office of the Attorney General for the Commonwealth of

4

Pennsylvania, *Peter F. Neronha*, Attorney General, Office of the Attorney General for the State of Rhode Island, *Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, and *Joshua L. Kaul*, Attorney General, Office of the Attorney General for the State of Wisconsin, were on the brief for *amici curiae* State of New York, et al. in support of appellee.

Before: KATSAS, RAO and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: The District of Columbia sued several energy companies in the Superior Court of the District of Columbia, alleging the companies violated District law by making material misstatements about their products' effects on climate change. The defendants removed the case to the federal district court, which determined it lacked jurisdiction and remanded.

We agree that remand was proper. Under the time honored well-pleaded complaint rule, it is the cause of action chosen by the plaintiff that governs whether a lawsuit may be filed in federal court. Here, the District did not invoke a federal cause of action but relied instead on the District of Columbia's consumer protection statute. The companies raise what amount to federal defenses, but that is not enough to establish federal jurisdiction over the District's claims.

I.

The District of Columbia sued Exxon Mobil, Shell, BP, and Chevron, as well as various subsidiary entities ("Companies"), in the Superior Court of the District of Columbia. According to the District, the Companies deceived

consumers about the causal link between fossil fuel usage and climate change. Specifically, the District alleges the Companies inaccurately advertised their fossil fuel products as "green" and "clean" and failed to warn consumers about the products' effects on the climate. These "greenwashing campaigns" led District consumers to purchase more fossil fuels, and thus contribute more to climate change, than they otherwise would have. Relying exclusively on the District of Columbia Consumer Protection Procedures Act ("CPPA"), the District maintains that the Companies' advertisements and information campaigns about fossil fuels were "unfair or deceptive trade practices." D.C. CODE § 28-3904. The District requested a permanent injunction barring the Companies from violating the CPPA, as well as damages and civil penalties.

The Companies removed the case to the United States District Court for the District of Columbia. They argued that the consumer protection suit was in fact part of a coordinated campaign to alter the nation's energy policy, circumventing federal environmental policy decisions by obtaining favorable judgments in state courts. The Companies advanced several grounds for federal jurisdiction, which the District Court rejected, remanding the case to the Superior Court of the District of Columbia.

The Companies appealed. Ordinarily we lack jurisdiction over the appeal of a remand order, but Congress has provided an exception for cases removed pursuant to the federal officer removal statute. 28 U.S.C. § 1447(d). Because the Companies invoked the federal officer removal statute as one of their grounds for removal, the appeal is properly before us. Moreover, we may "consider all of the defendants' grounds for removal," not merely whether removal is appropriate under the federal officer removal statute. *BP p.l.c. v. Mayor of Baltimore*, 141 S. Ct. 1532, 1543 (2021). The remand order goes to subject

matter jurisdiction, and so our review is de novo. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009).

## II.

An action may be removed to federal court when it "could have been brought originally in federal court." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019); *see also* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."); *id.* § 1451 ("The term 'State court' includes the Superior Court of the District of Columbia."). The Companies maintain federal jurisdiction is appropriate because: (i) the District's suit arises under federal common law; (ii) the District's suit raises disputed and substantial federal questions, so it may be removed under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); (iii) the federal officer removal statute applies; and (iv) removal is proper pursuant to the Outer Continental Shelf Lands Act, Pub. L. No. 212, 67 Stat. 462 (1953) (codified at 43 U.S.C. §§ 1331 *et seq.*).

None of these grounds justifies removal of the District's suit, and we thus affirm the district court's order remanding the case to the Superior Court. In reaching this conclusion, we are in accord with the other courts of appeals, which have unanimously found there is no federal jurisdiction where state or local governments have brought state-law actions against energy companies for conduct relating to climate change.[1]

---

[1] The District's suit is similar to many that state governments have brought in state courts, alleging that energy companies have

7

A.

The Companies first maintain that the District's claim, even if ostensibly brought under the CPPA, actually turns on the federal common law of interstate air pollution and therefore arises under federal law. 28 U.S.C. § 1331 (providing district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). We disagree.

For over a century, American courts have applied the well-pleaded complaint rule, under which "[a] suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). The fact that a lawsuit will likely turn on a federal question is generally insufficient to confer federal jurisdiction if the plaintiff proceeds under a state-law cause of action. Even if it is "very likely, in the course of the litigation," that a federal question will arise, that does "not show that the suit … arises under" federal law. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Moreover, "it is … settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if

---

promoted fossil fuels while concealing their impacts on climate change. In each of these cases, the companies have removed to federal court, only to have the suits remanded to state court. *See Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022); *Mayor of Baltimore v. BP p.l.c.*, 31 F.4th 178 (4th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022); *City of Oakland v. BP p.l.c.*, 969 F.3d 895 (9th Cir. 2020).

both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

It is undisputed that the District's complaint pleads only District law violations under the CPPA, which is part of the D.C. Code and enacted pursuant to the District of Columbia's legislative power over "all rightful subjects of legislation within the District." D.C. CODE § 1-203.02; District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, tit. III, § 302, 87 Stat. 774, 784 (1973). Congress has explicitly defined the "laws of the United States" not to include "laws applicable exclusively to the District of Columbia." 28 U.S.C. § 1366. It follows that the District's suit, which arises under the CPPA, does not arise under the "laws … of the United States." 28 U.S.C. § 1331.

Nonetheless, the Companies argue that removal is appropriate under the "artful pleading" doctrine, which permits removal in rare instances when "a cause of action in the plaintiff's complaint, if properly pled, would pose a federal question and make the case removable" but the plaintiff has attempted to frustrate removal "by pleading [the] case without reference to any federal law." CHARLES ALAN WRIGHT ET AL., 14C FEDERAL PRACTICE & PROCEDURE § 3722.1 (4th ed. 2018). Under this corollary to the well-pleaded complaint rule, the Companies say the District's CPPA claims—that the Companies misled the public about climate change and that their production and promotion of fossil fuels contributed to climate change—in fact rest on the federal common law of interstate air pollution. If we conclude the District "has 'artfully pleaded' claims in this fashion, [we] may uphold removal even though no federal question appears on the face of the [District's] complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

The artful pleading doctrine paradigmatically allows removal when a state-law cause of action is completely preempted by a federal statute. In that circumstance, any "claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The Supreme Court has found complete preemption in only three instances, and in each case a statute "clearly manifested" that federal law wholly displaced state law. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560–61 (1968) (section 301 of the Labor Management Relations Act); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) (section 502(a) of the Employee Retirement Income Security Act); *Beneficial Nat'l Bank*, 539 U.S. at 10–11) (sections 85 and 86 of the National Bank Act); *see also Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 698 (2006) ("If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear."). The Companies, however, do not argue that Congress has completely preempted the District's CPPA suit.

Instead, the Companies suggest the federal common law of interstate air pollution might be "analogous in some respects to complete preemption," such that the District's claim, even if brought under the CPPA, should be understood as grounded in federal common law. They rely on *Illinois v. City of Milwaukee* ("*Milwaukee I*"), which explained that nuisance actions "deal[ing] with air and water in their ambient or interstate aspects" were traditionally governed by federal common law in light of the "overriding federal interest in the need for a uniform rule of decision." 406 U.S. 91, 103, 105 n.6 (1972). This federal common law thereby displaced "the varying … law of the individual States." *Id.* at 107 n.9 (cleaned up).

The Companies admit their reliance on federal common law is not an orthodox application of the doctrine of complete preemption, which turns on whether Congress has clearly provided for complete preemption in a federal statute. Nonetheless they argue that when a state-law action is necessarily governed by federal common law, the artful pleading doctrine should allow for removal to federal court for such claims. But federal common law does not support removal here.

1.

To begin with, it is unclear whether federal common law could serve as the basis for removal under the artful pleading doctrine. The Supreme Court has suggested that artful pleading may be limited to complete preemption. *See Beneficial Nat'l Bank*, 539 U.S. at 8 ("[A] state claim may be removed to federal court in only two circumstances—when Congress expressly so provides … or when a federal statute wholly displaces the state-law cause of action through complete pre-emption."); *see also* 14C FEDERAL PRACTICE & PROCEDURE § 3722.1 ("The absence from [*Rivet*, 522 U.S. at 475] of any reference to a category of artful pleading that is conceptually distinct from the complete preemption doctrine hints that completely preempted claims may be the only claims to which the artful-pleading doctrine should apply."). And the Court has rejected the idea that there might be some generic artful pleading basis for federal jurisdiction. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 392–93 (2016) ("We have no idea how a court would" "go behind the face of a complaint to determine whether it is the product of 'artful pleading.'"). But even assuming federal common law could provide a basis for removal under the artful pleading doctrine, the Companies' argument fails as there is no longer any relevant federal common law that might displace the District's CPPA claim.

11

The Clean Air Act comprehensively regulates air pollution at a national level, and the Supreme Court has held that the Act displaces the federal common law and provides the relevant body of federal law for nuisance actions involving interstate air pollution. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (explaining "the Clean Air Act and the EPA actions it authorizes displace any federal common-law right" to bring interstate air pollution actions). Federal common law, whereby the federal courts apply uniform, judicially crafted rules of decision, "plays a necessarily modest role under a Constitution that vests the federal government's 'legislative Powers' in Congress and reserves most other regulatory authority to the States." *Rodriguez v. FDIC*, 140 S. Ct. 713, 717 (2020); *see* U.S. CONST. art. I, § 1 (vesting "[a]ll legislative Powers" in Congress). Only in the "absence of an applicable Act of Congress" may "the federal courts … fashion the governing rule of law according to their own standards." *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 367 (1943). Once Congress has legislated in an area previously governed by federal common law, "the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois* ("*Milwaukee II*"), 451 U.S. 304, 314 (1981).

Because there is no federal common law of interstate air pollution after the Clean Air Act, the District's CPPA suit could not have been pleaded as a federal common law action.

2.

The Companies attempt to overcome this straightforward conclusion. Although they recognize the Clean Air Act has displaced the federal common law of interstate air pollution, they maintain that this fact is irrelevant to the jurisdictional question of whether removal is proper. They contend that state-law suits about interstate emissions are barred by federal

common law as a jurisdictional matter, and therefore that the District's complaint must be understood as bringing a federal common law action. The jurisdictional question, they insist, is distinct from the merits determination of whether there is a remedy under federal common law.

The Companies' argument is foreclosed by the doctrinal underpinnings of federal common law and by numerous Supreme Court decisions. We can find no support for the suggestion that federal common law has the Schrödinger quality advanced by the Companies—where one does not know if it is alive or dead until the case is removed to federal court. The Court has repeatedly emphasized that when Congress "speak[s] directly to a question," that legislation displaces federal common law.[2] *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978); *see also id.* ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifical[ly] enacted."). Legislative displacement of federal common law applies for both jurisdictional and merits purposes.[3]

---

[2] *See also Am. Elec. Power Co.*, 564 U.S. at 423–24 ("[I]t is primarily the office of Congress, not the federal courts, to prescribe national policy in areas of special federal interest."); *TVA v. Hill*, 437 U.S. 153, 194 (1978) ("Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought. … Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end.").

[3] The cases cited by the Companies do not support their argument that federal common law may persist for jurisdictional purposes even when displaced with respect to the merits. In *Oneida Indian Nation of New York v. County of Oneida*, the cause of action was "claimed to arise under federal law in the first instance." 414 U.S. 661, 676

In the Clean Air Act, Congress displaced federal common law through comprehensive regulation, but it did not completely preempt state law,[4] nor did it provide an independent basis for removal, as it has done in many other statutes. *See, e.g.*, 28 U.S.C. §§ 1442, 1452, 1453 (allowing removal of suits against federal officers, claims related to bankruptcy, and class-action suits). It would be inconsistent with Congress's directives and the Supreme Court's decision in *American Electric* for this court to conclude that federal common law persists solely for the purpose of removing the District's CPPA claims to federal court.

When Congress legislates to displace federal common law, the statute governs the extent to which state law is preempted. *Milwaukee II*, 451 U.S. at 312–13 (explaining "[t]he enactment of a federal rule in an area of national concern, *and the decision whether to displace state law in doing so*, is generally made not by the federal judiciary, purposefully insulated from democratic pressures, but by the people through their elected

---

(1974). The Court did not make a separate jurisdictional determination of the kind advanced by the Companies because there was no question of preemption. Possession of tribal lands is exclusively the purview of federal law. *Id.* at 677–78. Similarly, in *United States v. Standard Oil Co.*, the Court addressed cases where "Congress has not acted affirmatively about the specific question." 332 U.S. 301, 307 (1947). Unlike this case, there was no question of whether federal common law persisted *after* Congress had legislated.

[4] Every court of appeals to consider the issue has concluded that the Clean Air Act does not completely preempt state-law causes of action. *See Minnesota*, 63 F.4th at 710 ("Because Congress has not acted, the presence of federal common law here does not express Congressional intent of any kind—much less intent to completely displace any particular state-law claim."); *City of Hoboken*, 45 F.4th at 707; *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder*, 25 F.4th at 1265.

representatives in Congress") (emphasis added). For example, the Supreme Court concluded that the Clean Water Act displaced the federal common law of interstate water pollution. *See id.* at 317. The Court later considered whether state common law pollution actions were preempted. In doing so, the Court assessed the question of preemption entirely as a matter of *statutory* interpretation, stating that the relevant question was "whether the [Clean Water] Act pre-empts [state] common law to the extent that [common] law may impose liability." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). The Court repeatedly emphasized Congress's directives in the statute, rather than the preemptive effect of (any residual) federal common law. *See id.* at 491–500. And while the Court held the particular state-law claim at issue was preempted under the Clean Water Act, it held that other state-law claims were not. *Id.* at 497.

*Ouellette* is directly analogous to the question before us, and the Supreme Court has explicitly signaled that courts should apply the *Ouellette* reasoning to state-law claims involving interstate air pollution. In *American Electric*, after holding the Clean Air Act displaces the federal common law of interstate air pollution, the Court stated that "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act." 564 U.S. at 429 (citing *Ouellette*, 479 U.S. at 489, 491, 497). Whether the District's suit may go forward thus depends on the preemptive effect of the Clean Air Act, not on the preemptive effect of federal common law.

The Companies' argument—that the District's state-law claims implicating interstate air pollution arise under federal common law even following the Clean Air Act—simply cannot be squared with *American Electric* or *Ouellette*.[5] Under the

---

[5] The cases the Companies cite for this argument are unavailing. For instance, the Ninth Circuit in *Native Village of Kivalina v.*

Companies' view, *all* state-law claims dealing with interstate pollution would remain barred by federal common law. Yet *Ouellette* explicitly concluded that some state-law claims could proceed despite the Clean Water Act, confirming that the federal common law of interstate pollution was no longer a jurisdictional bar to state-law pollution claims. *Ouellette*, 479 U.S. at 497; *cf.* Jonathan H. Adler, *Displacement and Preemption of Climate Nuisance Claims*, 17. J.L. ECON & POL'Y 217, 255 (2022) ("Under *Ouellette*, the displacement of federal common law does *not* mean that claims of an interstate or cross-boundary character are to be dismissed as beyond the

---

*ExxonMobil Corp.* held that a cause of action grounded in federal common law was displaced by the Clean Air Act—precisely the proposition that is fatal to the Companies' argument. *See* 696 F.3d 849, 856–58 (9th Cir. 2012). And in *City of New York v. Chevron Corp.*, which held that a nuisance action brought by the City of New York could not go forward in light of federal common law and the Clean Air Act, the Second Circuit expressly did not decide "whether the defendants' anticipated defenses could singlehandedly create federal-question jurisdiction under 28 U.S.C. § 1331 in light of the well-pleaded complaint rule." 993 F.3d 81, 94–98 (2d Cir. 2021).

Moreover, the courts of appeals have overwhelmingly rejected the Companies' argument that even after the Clean Air Act the federal common law of interstate pollution overrides all state-law claims. *See Rhode Island*, 35 F.4th at 55 ("The … Clean Air Act … ha[s] statutorily displaced any federal common law that previously existed. So we cannot rule that any federal common law controls Rhode Island's claims.") (cleaned up); *Mayor of Baltimore*, 31 F.4th at 206 ("Defendants believe that removal is proper based on federal common law even when the federal common law claim has been deemed displaced, extinguished, and rendered null by the Supreme Court. We believe that position defies logic."); *Bd. of Cnty. Comm'rs of Boulder*, 25 F.4th at 1260 ("[T]his case could not have been removed to federal court on the basis of federal common law that no longer exists.") (cleaned up).

province of the courts. Rather, displacement means that federal common law is unavailable, either to resolve or preempt the … plaintiffs' claims."). And in *American Electric*, the Court similarly stated that the availability of a state-law suit turned on the preemptive effect of the Clean Air Act, not federal common law.

The Companies do not argue the Clean Air Act completely preempts the District's suit. Whether that statute bars the District's claim as a matter of ordinary preemption is a merits defense to be resolved in the first instance by the District's courts. *See Metro. Life Ins.*, 481 U.S. at 63 ("Federal preemption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.").

\* \* \*

The District brought claims exclusively under District of Columbia law, which presumptively must be heard in the District's courts. The artful pleading doctrine does not support removal. The Companies do not identify any statute that completely preempts the District's CPPA claims, and the Companies cannot rely on federal common law governing air pollution because, at the very least, it has been displaced by the Clean Air Act. While the Companies may invoke Clean Air Act preemption as a merits defense, this does not support removal of the District's CPPA claims to federal court.

B.

The Companies also argue that the federal question statute provides jurisdiction under the *Grable* doctrine, which is a limited exception to the well-pleaded complaint rule. The doctrine applies when "a federal issue is: (1) necessarily raised,

(2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). All factors must be met for a federal court to have jurisdiction.

*Grable* is inapplicable because no federal issue is "necessarily raised" by the District's suit. A federal question is necessarily raised only if it is "an essential part of [the plaintiff's] affirmative claim" rather than a "response to an anticipated defense." *D.C. Ass'n of Chartered Pub. Schs. v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (cleaned up). This requirement is critical given the "black-letter law that an anticipated federal defense does not substantiate federal-question jurisdiction." *Id.* The District has alleged only that the Companies "engage[d] in an unfair or deceptive trade practice" under District law. D.C. CODE § 28-3904. The District's claim is brought under the CPPA without reference to any federal law at all.

The District's lawsuit does not fit within the Supreme Court's previous decisions applying the *Grable* doctrine. In these cases, the state-law claim—as asserted by the plaintiff—required resolving a federal issue. In *Smith v. Kansas City Title & Trust Co.*, a shareholder sued under Missouri corporate law to enjoin a company from investing funds in certain federally issued bonds. 255 U.S. 180, 195 (1921). The only argument advanced by the plaintiff was that the act of authorizing the bonds violated the federal Constitution. *Id.* In *Grable*, the plaintiff asserted a state-law quiet title action that turned on whether the IRS had violated federal statutes in seizing its property. 545 U.S. at 310–11. And in *Gunn v. Minton*, where the Court found the federal issue was necessarily raised but not substantial, the plaintiff asserted a legal malpractice claim based on the allegation that he would have prevailed in a

federal patent suit absent his attorney's misconduct. *See* 568 U.S. at 255. In each case, the plaintiff's theory of the state-law claim explicitly turned on a predicate federal law question.

By contrast, nothing in the District's complaint turns on federal law. The District does not argue the CPPA violation rests on the violation of a federal statute, nor does it otherwise link its District law claim to federal law. Rather, the District alleges the Companies have inaccurately advertised their fossil fuel products and misrepresented the effects of those products on climate change and thereby committed an unfair or deceptive trade practice in contravention of District law.

The Companies argue the District's claims are properly resolved by federal law because "the *substance* of the allegations in the complaint require the application of federal law and thus give rise to federal jurisdiction." They maintain the complaint effectively "seeks to establish liability" for alleged misrepresentations about the environmental effects of fossil fuels "in contravention of federal law that 'affirmatively promotes fossil fuel use'" through federal tax benefits, subsidies, and leases. This appears to be a repackaging of the Companies' artful pleading argument, which we have already rejected.

Of course, resolving the District's suit may well require the application of federal law in the sense that it will require resolving questions of federal preemption. But to reiterate, that is simply an anticipated federal defense that cannot serve as the basis for federal question jurisdiction.

C.

The Companies also argue that removal is appropriate under the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). The statute initially allowed defendants to

remove if they were "sued in an official or individual capacity *for* any act under color of such office." 28 U.S.C. § 1442(a)(1) (2006) (emphasis added). The Supreme Court interpreted that language to require a "causal connection between the charged conduct and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up). But in 2011, Congress broadened the statute to allow removal of suits "for *or relating to*" any act under color of such office. Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545 (emphasis added). Courts have generally interpreted that amendment to permit removal over "actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (same).

After the amendment, the statute does not require a causal connection between acts taken under color of federal office and the basis for the action. Rather, it is enough that acts taken under color of federal office are "connected or associated" with the conduct at issue in the case. *Latiolais*, 951 F.3d at 296. We need not resolve the exact bounds of that standard, however, because under any reasonable interpretation, the District's suit is not "for or relating to" actions taken by the Companies under color of federal office.

The Companies first point to conduct that occurred long before the events relevant to this litigation. For instance, the Companies' predecessors purportedly acted under federal officers by assisting with the production of aviation fuel and other essential military products during World War II and the Korean War, and by complying with orders of the Petroleum Administration for Defense during these periods and during the 1973 oil embargo. But the District does not allege the

Companies acted unlawfully until the late 1980s, and none of the alleged misrepresentations bears any relationship to the sale or production of military fuels in the mid-20th century. There is simply no relationship between actions taken by the Companies' predecessors in the 1940s and 1950s and the allegedly deceptive statements made by the Companies about climate change since 1980.

Next, the Companies contend the District's suit is related to commercial relationships between the Companies and the federal government that persist to this date. The Companies explain they have extracted gasoline on the Outer Continental Shelf, an area subject to federal regulation, pursuant to leases issued by the federal government. Similarly, Exxon and its predecessor Standard Oil have contracted with the Navy to coordinate extraction and operations at the Elk Hills Naval Petroleum Reserve in California. Furthermore, affiliates of Shell and Exxon have operated and leased Strategic Petroleum Reserve pipelines and terminals subject to federal regulations.

Whether or not these commercial relationships are sufficient to establish the Companies were "acting under" federal officers, they are not sufficiently "related to" the District's suit. The District alleges the Companies engaged in unlawful misrepresentations by making statements to the general public through advertising campaigns in national newspapers and magazines expressing uncertainty about the effect of fossil fuels on anthropogenic climate change. But none of these alleged misrepresentations references the Outer Continental Shelf, the Elk Hills Reserve, or the Strategic Petroleum Reserve. Nor is there any allegation the Companies engaged in these misrepresentations at the behest of or in coordination with federal officers. Rather, the complaint exclusively references statements made by the Companies that relate broadly to climate change, rather than to any specific

activities conducted by the Companies in concert with the federal government. As the Eighth Circuit recently stated, "[t]he Energy Companies' production of military-grade fuel, operation of federal oil leases, and participation in strategic energy infrastructure, even if done at federal direction, bears little to no relationship with how they conducted their marketing activities to the general public." *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023).

The Companies also insist that the relevant question is not the District's theory of liability but the harm that gives rise to the relevant damages. They argue the alleged injuries are premised on harm caused by climate change, which is in turn causally linked to the extraction of fossil fuel more generally, including from federal leases, the Elk Hill Naval Reserve, and the Strategic Petroleum Reserve. We disagree.

The District emphasized at oral argument that it "w[ould] not seek damages" for the causal connection between the "overuse" of fossil fuels and "global climate change" or "for the physical effects of climate change in the District." Instead, the District committed it would seek only those damages associated with misrepresentations made by the Companies. It follows that there is no link between the leasing activities conducted by the Companies and the damages at issue in this lawsuit. The Companies have failed to demonstrate that the District's suit fits within the federal officer removal statute.

D.

Finally, the Companies argue removal is appropriate under the Outer Continental Shelf Lands Act ("OCSLA"). That statute provides the federal district courts with original jurisdiction over "cases and controversies arising out of, or in connection with … any operation conducted on the outer Continental Shelf which involves exploration, development, or

production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). The Companies argue that they engage in "operation[s] conducted on the outer Continental Shelf" by operating leases in the area and by extracting oil and gas from the Shelf. They maintain the District's claims "aris[e] out of" or are "in connection" with such operations because they target the advertising of products extracted and produced from these operations.

The courts of appeals are not entirely in accord as to the standard for removal under OCSLA. Although some courts have required operations on the Shelf be a but-for cause of the claims at issue, *see Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996), other courts simply ask whether the suit is "linked closely to production or development on the Shelf," *see City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 710 (3d Cir. 2022), or whether the claims pertain to "actions or injuries occurring on the outer Continental Shelf," *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 753 (9th Cir. 2022). In practice, however, these different formulations often lead to similar results, as the cases finding OCSLA jurisdiction consistently involve "either claims with a direct physical connection" to the Shelf, such as tort claims arising from accidents on the Shelf, or "contract or property dispute[s] directly related" to operations on the Shelf. *Id.* at 754.

We need not resolve which standard governs removal. Under any reasonable understanding, the District's claims of misrepresentations tied to the consumption of fossil fuels do not "aris[e] out of," nor are they "in connection with," operations "conducted on" the Outer Continental Shelf. 43 U.S.C. § 1349(b)(1). The District alleges the Companies violated the CPPA through general statements they made to the

public about the risks of climate change and the role their products play in causing climate change. At most this suit concerns statements made about products extracted from the Shelf, which is a far cry from the tort or contract disputes that have justified removal jurisdiction under OCSLA. Any connection between the alleged misrepresentations and the Companies' operations on the Shelf is incidental and tenuous and therefore cannot support removal.[6]

\* \* \*

Under the well-pleaded complaint rule, the cause of action chosen by the plaintiff usually determines the existence of federal jurisdiction. This case is no exception. The District brought suit exclusively under the D.C. Code, and the Companies have provided no basis for federal jurisdiction. We affirm the district court's order remanding this case to the Superior Court of the District of Columbia.

*So ordered.*

---

[6] Every circuit to consider the issue has concluded that removal is not appropriate under OCSLA for similar state-law claims. *See Connecticut*, 83 F.4th at 147 (holding the suit did not arise in connection with defendants' operations on the Shelf); *Minnesota*, 63 F.4th at 713 (holding the claims were not an "operation" or "conducted on" the Shelf); *Mayor of Baltimore*, 31 F.4th at 232 (holding the "connection … is simply too remote"); *City of Hoboken*, 45 F.4th at 712 (same); *Bd. of Cnty. Comm'rs of Boulder*, 25 F.4th at 1274 (holding the claim has "no direct connection" to the Shelf); *Rhode Island*, 35 F.4th at 60 (same).